**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE SANCHEZ, on behalf of himself and all other persons similarly situated, | ) ) | |
| | ) | Case No. 14 C 2143 |
| Plaintiff, | ) ) | |
| | ) | Judge Zagel |
| v. | ) ) | |
| | ) | Magistrate Judge Martin |
| CLEANNET USA, INC. and CLEANNET OF ILLINOIS, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff Jose Sanchez, on behalf of himself and all other persons similarly situated, known and unknown ("Plaintiff"), through his attorneys, for his Complaint against Defendants CleanNet USA, Inc. and CleanNet of Illinois, Inc., (collectively "Defendants" or "CleanNet") state as follows:

**INTRODUCTION**

1.      The federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL") are remedial statutes designed to ensure that employees who are suffered or permitted to work for an employer are paid at least the federal and state minimum wage rate for all hours worked and overtime wages for all hours worked in excess of 40 hours in individual work weeks.

2.      To avoid these obligations, CleanNet has created a business model in which Defendants essentially sell low wage jobs to unskilled laborers, particularly in immigrant communities, through a fictional "franchise agreement."

3.      CleanNet USA, Inc., a national janitorial enterprise with regional subsidiaries such as CleanNet of Illinois, Inc., enticed Plaintiff and other similarly situated laborers with the

1

prospects of running a business in which "You're The Boss!" to purchase a CleanNet "franchise" for thousands of dollars low-skilled cleaning jobs, largely with money financed by CleanNet itself at high interest rates, with false and misleading promises as detailed more fully below. *See*, for example, CleanNet Brochure at 1, attached hereto as Exhibit A.

4.       Despite the promises of "being your own boss", the actual 40 plus page CleanNet franchise agreement, full of fine print and often in a language not spoken by the cleaning workers signing the agreement, makes clear that CleanNet has the exclusive authority to control almost all aspects of the "franchised" business, including, among other things, customer relations, negotiations of customer contracts, assignment of work, manner in which the work is to be performed, and materials and equipment to be utilized.

5.       As a result, CleanNet has secured a national workforce of sub-minimum wage cleaners, denied overtime wages who are dependent on and often in debt to CleanNet and unable to leave the employment relation without significant loss.

6.       CleanNet's business model described above and in greater detail within this Complaint, violates the broad remedial protections of the FLSA and the IMWL.

7.       Plaintiff brings his claim as a collective actions pursuant to Section 216(b) of the FLSA. See Plaintiff's consent to represent attached hereto as Exhibit B. Plaintiff will also seek to certify his state law claims as a class action pursuant to Fed. R. Civ. P. 23(a) and (b).

8.       Further, Defendants have violated the Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/1 *et seq.*

9.       The IFDA is a remedial statute passed by the Illinois legislature to protect the rights of franchisees by requiring franchisors to register with the state and provide franchisees with adequate and accurate information about the business opportunity. 815 ILCS 705/2.

**NATURE OF THE CASE**

10.     This lawsuit arises under the FLSA, the IMWL, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA") for Defendants': 1) failure to pay Plaintiff and other similarly situated employees minimum wages for all time worked in violation of the FLSA and the IMWL; 2) failure to pay Plaintiff and other similarly situated employees overtime wages for all hours worked over forty (40) in individual workweeks in violation of the FLSA and the IMWL; 3) failure to pay Plaintiff and other similarly situated employees for all time worked at a rate agreed to by the Parties; and 4) practice of taking unauthorized deductions from Plaintiff's and other similarly situated employees' earned wages in violation of the IWPCA. Plaintiff also brings an Illinois common law claim of fraud in the inducement for Defendants' systemic misrepresentations to Plaintiff and other similarly situated laborers of, including but not limited to, the amount of available cleaning contracts and of the guaranteed amount of monthly income. In addition, Plaintiff brings claims against Defendants and other similarly situated laborers for Defendants' failure to comply with the requirements in the IFDA, 815 ILCS 705/1 *et seq.*

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over Plaintiff' FLSA claim pursuant to 28 U.S.C. § 1331, arising under 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this judicial district as the facts and events giving rise to Plaintiff's claims occurred in this judicial district and as Defendants maintained offices and transacted business within this jurisdiction.

**PARTIES**

**A.     Plaintiff**

13.     During the relevant time period, Plaintiff Jose Sanchez:

  a.  has resided in the state of Illinois and within this judicial district;

  b.  has handled goods that moved in interstate commerce;

  c.  has been an "employee" of Defendants as defined by the FLSA, the IMWL, and the IWPCA'; or, in the alternative,

  d.  has been a "franchisee" of Defendants as that term is defined by the IFDA, 815 ILCS 705/3.

**B.**  <u>**Defendants**</u>

14.  During the relevant time period, Defendant CleanNet USA, Inc.:

  a.  has been a corporation organized under the laws of the State of Virginia with its principal place of business in McLean, Virginia;

  b.  has conducted business within this judicial district;

  c.  has sold "franchises" to Plaintiff and other similarly situated laborers, requiring Plaintiff and other similarly situated laborers to sign standard-form contracts;

  d.  has been an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is an "enterprise" engaged in commerce, or in the production of goods for commerce, within the meaning of Section 3(s)(1)(A) and Defendant's annual gross volume of sales or business done exceeds $500,000, exclusive of excise taxes;

  e.  has had two or more employees that have handled goods that have moved in interstate commerce;

      f.      has jointly been Plaintiff's "employer," as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/1 *et seq.*; or, in the alternative,

      g.      has been a "franchisor" as that term is defined by the IFDA, 815 ILCS 705/3.

15.      During the relevant time period, Defendant CleanNet of Illinois, Inc.:

      a.      has been a corporation organized under the laws of the State of Illinois with its principal place of business in Oak Brook, Illinois;

      b.      has conducted business within this judicial district;

      c.      has sold "franchises" to Plaintiff and other similarly situated laborers, requiring Plaintiff and other similarly situated laborers to sign standard-form contracts;

      d.      has been an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is an "enterprise" engaged in commerce, or in the production of goods for commerce, within the meaning of Section 3(s)(1)(A) and Defendant's annual gross volume of sales or business done exceeds $500,000, exclusive of excise taxes;

      e.      has had two or more employees that have handled goods that have moved in interstate commerce;

      f.      has jointly been Plaintiff's "employer," as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/1 *et seq.*; or, in the alternative,

g.      has been a "franchisor" as that term is defined by the IFDA, 815 ILCS
705/3.

## FACTUAL BACKGROUND

**CleanNet's Unfair and Deceptive Business Practices**

16.     CleanNet offers cleaning "franchises" to individuals, for which the individuals
enter into cleaning franchise agreements with Defendants and pay thousands of dollars to
Defendant.

17.     In most cases, as with Plaintiff, the "franchisee's" investment in the franchise is
financed in whole or in large part by Defendants.

18.     In exchange for an individual laborer paying thousands of dollars, generally
financed by CleanNet itself, and entering into a franchise agreement with CleanNet, CleanNet
claims it will provide these individuals the opportunity to perform janitorial cleaning work for
CleanNet's clients.

19.     Throughout the relevant time period, CleanNet retained complete control over the
relationship between these "franchisees" and CleanNet's clients.

20.     For instance, CleanNet chooses which cleaning accounts to offer to which cleaning
worker; determines the prices for the cleaning services; can and does remove cleaning accounts
from laborers, including Plaintiff, without any notice and without any opportunity to cure
perceived defects in performance; bills the cleaning accounts and takes deductions from the
cleaning workers' pay.

21.     Throughout the relevant time period, CleanNet retained complete control over the
operation of its franchises.

22.     For instance, CleanNet controls the type of cleaning equipment and supplies that
cleaning workers use, the types of specialized commercial cleaning services that cleaning workers

may provide, methods of operations, as well as centralized billing, bookkeeping, and accounting methods.

23.     Throughout the relevant time period, neither Plaintiff nor other similarly situated laborers have been able to negotiate for different terms and conditions with CleanNet customers from those appearing in the standard-form franchise agreement provided by CleanNet.

24.     For example, if the price of the cleaning equipment and supplies that CleanNet requires Plaintiffs and other similarly situated laborers to purchase from CleanNet goes up, the CleanNet laborers/"franchisees" have no ability to pass that increased cost onto the consumer as a truly independent contractor would have.

25.     CleanNet then suffers and permits these individuals to clean buildings and other facilities for clients of CleanNet.

26.     On information and belief, CleanNet has contracted hundreds of such "franchisees" in Illinois and thousands throughout the United States.

27.     Upon information and belief, CleanNet targets individuals with limited fluency in English because they are easily victimized by CleanNet's misrepresentations and other systemic legal violations.

28.     The franchise agreement negotiated with Plaintiff was in English despite the fact that Plaintiff is a mono-language Spanish speaker.

29.     Any conversations with Plaintiff about the franchise agreement were held in Spanish and in a summary manner and the terms of the franchise agreement were never translated into English or explained to Plaintiff.

30.     Upon information and belief, CleanNet only provides the franchise agreement to similarly situated laborers in English even if the laborer does not speak English and CleanNet fails to translate or explain the agreement in a language the laborer understands.

31.     Throughout the relevant time period, CleanNet's representatives knowingly and intentionally misrepresent terms of the relationship between CleanNet and its "franchisees" to induce Plaintiff and other similarly situated laborers to sign those agreements.

32.     CleanNet's misrepresentations include both affirmative misrepresentations and omissions of material fact.

33.     Throughout the relevant time period, CleanNet, through its agents and its marketing materials, represented to Plaintiff and other similarly situated laborers that they were investing a lucrative business, when in fact they were paying for the right to become CleanNet's janitorial employees.

34.     Throughout the relevant time period, CleanNet, through its agents and its marketing materials, represented to Plaintiff and other similarly situated laborers that they will have a guaranteed customer base, knowing that CleanNet only guaranteed cleaning accounts for a maximum of 180 days and had numerous hidden contingencies as to whether and when cleaning accounts would be replaced.

35.     Throughout the relevant time period, Plaintiff and other similarly situated laborers either received the promised monthly business for a very short time or infrequently received the amount in monthly business they were promised by CleanNet.

36.     Throughout the relevant time period, CleanNet, through its agents and its marketing materials, represented to Plaintiff and other similarly situated laborers that they would have control over which cleaning accounts they would accept, but CleanNet routinely offered Plaintiff and other

similarly situated laborers cleaning accounts known by CleanNet to be extremely difficult or impossible for Plaintiff and other similarly situated laborers to accept.

37.     For example, Plaintiff and other similarly situated laborers were offered cleaning accounts that were geographically inconvenient, that were too large for them to service, or were too small to be worth the time taken to travel to the cleaning account.

38.     Throughout the relevant time period, CleanNet, thought its agents, offered to Plaintiff and other similarly situated laborers cleaning accounts that were poorly priced, which would not make much business sense to accept since these accounts would leave Plaintiff and other similarly situated laborers earning less than the federal- and/or Illinois-mandated minimum wage.

39.     Throughout the relevant time period, CleanNet, through its agents and its marketing materials, represented to Plaintiff and other similarly situated laborers that they would be offered a guaranteed customer base within a few months of signing the franchise agreement, knowing that the franchise agreement contains numerous hidden contingencies that allow CleanNet to extend the time to offer cleaning accounts indefinitely.

40.     Throughout the relevant time period, CleanNet, through its agents and its marketing materials, represented to Plaintiff and other similarly situated laborers that would earn substantial monthly revenues from their cleaning accounts, knowing that if a cleaning account does not pay CleanNet, CleanNet would deduct the amounts advanced for work performed on this cleaning account from Plaintiff and other similarly situated laborers' pay.

41.     Throughout the relevant time period, Plaintiff and other similarly situated laborers typically retained cleaning accounts for less time than it took for them to earn back their initial investments in the cleaning "franchise," a fact that was noticeably absent from the assurances made by CleanNet's agents and promotional materials.

42.     Throughout the relevant time period, CleanNet did not pay Plaintiff and other similarly situated laborers in a timely manner for work, generally paying them nearly a month after the work was performed.

43.     Throughout the relevant time period, CleanNet required Plaintiff and other similarly situated laborers to purchase cleaning supplies through CleanNet.

44.     Throughout the relevant time period, CleanNet misrepresented to Plaintiff and other similarly situated laborers that it offered cleaning supplies at much cheaper prices than other alternatives. However, because CleanNet bought its cleaning supplies in bulk from its suppliers, CleanNet's prices for cleaning supplies were typically much higher than the other alternatives.

45.     Throughout the relevant time period, CleanNet frequently removed accounts from Plaintiff and other similarly situated laborers without any advance notice and/or opportunity to cure any alleged defects, despite assuring Plaintiff and other similarly situated laborers at the time they signed the franchise agreement that CleanNet would give them substantial advance notice and an opportunity to correct alleged defects prior to removing cleaning accounts.

46.     Upon information and belief, CleanNet removed Plaintiff's and other similarly situated laborers' accounts to offer them to another newly-signed individual to count toward that individual's monthly guarantee.

47.     Throughout the relevant time period, CleanNet deducted excessive fees from Plaintiff's and other similarly situated laborers' wages, including, but not limited to, deductions and fees for insurance, cleaning supplies, royalty and management, and payments on promissory notes and interest.

48.     Throughout the relevant time period, CleanNet prohibited Plaintiff and other similarly situated laborers from performing commercial cleaning work for any customer unless the

10

customer had a signed contract with CleanNet, was billed through CleanNet, and had royalty and management fees taken out of Plaintiff's and other similarly situated laborers' wages.

**CleanNet's Misclassification of Its Cleaning Workers as Independent Contractors**

49.     Throughout the relevant time period, CleanNet misclassified Plaintiff and other similarly situated laborers as independent contractors.

50.     Throughout the relevant time period, Plaintiff and other similarly situated laborers provided cleaning services to CleanNet's clients within CleanNet's usual course of business.

51.     Throughout the relevant time period, CleanNet exerted behavioral and financial control over Plaintiff and other similarly situated laborers.

52.     Throughout the relevant time period, CleanNet instructed and trained Plaintiff and other similarly situated laborers on how to provide cleaning services and dictated the smallest details of Plaintiff's and other similarly situated laborers' job performance.

53.     Throughout the relevant time period, Plaintiff and other similarly situated laborers performed cleaning services exclusively for CleanNet's clients.

54.     Throughout the relevant time period, Plaintiff and other similarly situated laborers did not represent himself to the public as operating an independent business to provide cleaning services, and Plaintiff and other similarly situated laborers typically had not invested in an independent business apart from their payment of "franchise" fees to CleanNet.

55.     Because of CleanNet's misclassification of Plaintiff and other similarly situated laborers as independent contractors, throughout the relevant time period, Plaintiff and other similarly situated laborers had not received the benefits of an employment relationship under law, including, *e.g.,* timely payment of full wages for all hours worked, no improper deductions from pay, not having to pay for work or the expenses of running a business, etc.

## CLASS ALLEGATIONS

56.     Plaintiff will seek to certify the state law claims arising under the IMWL for Illinois-mandated minimum wages (Count III) and overtime wages (Count IV); those arising under the IWPCA for unpaid wages (Count V) and for unauthorized deductions (Count VI); those arising under the Illinois common law for Fraudulent Inducement (CountVII); and those arising under the IFDA (Count VIII) as class claims. Plaintiff will ask the Court to determine the rights of the parties pursuant to those statutes where applicable and to direct the Defendants to account for all time worked and wages paid to the class members during the temporality of the class.

57.     The "IMWL Class Period" and the "IFDA Class Period" is defined as any time since March 26, 2011 to the entry of judgment in this case.

58.     The "IWCPA Class Period" is defined as any time since March 26, 2001 to the entry of judgment in this case.

59.     Counts III through VIII are brought pursuant to Fed. R. Civ. P. Rule 23(a) and (b) because:

        a.     The class is so numerous that joinder of all members is impracticable. While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believe that Defendants have employed at least one hundred employees during the respective IMWL and IWPCA Class Periods;

        b.     There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members. These common questions of law and fact include, without limitation:

12

i. Whether Plaintiff and the Class are Defendants' employees;

ii. Whether Defendants failed to pay Plaintiff and the Class the Illinois-mandated minimum wage for all time worked in individual work weeks during the IMWL Class Period;

iii. Whether Defendants failed to pay Plaintiff and the Class overtime wages for all time worked over forty (40) hours in individual work weeks during the IMWL Class Period;

iv. Whether Defendants failed to pay Plaintiff and the Class for all time worked in individual work weeks at the rate agreed to by the Parties during the IWPCA Class Period;

v. Whether Defendants made false statements of material fact to induce Plaintiff and the Class to purchase franchises during the fraud in the inducement statutory period;

vi. Whether Defendants made false and misleading statements in the registration of its franchise with the State of Illinois.

c. The class representatives and the members of the class have been equally affected by Defendants' failure to pay Illinois minimum wages, overtime wages, and other earned wages;

d. Members of the class will be reluctant to bring forth claims for unpaid wages for fear of retaliation; and

e. The class representatives, class members, and Defendants have a commonality of interest in the subject matter and remedies sought and the class representatives are able to fairly and adequately represent the interest of the classes. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions creating a hardship on the class members, Defendants, and the Court.

60. Therefore, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**COUNT I**
**Violation of the FLSA – Minimum Wages**
**Plaintiff on behalf of himself and similarly situated employees**
*Section 216(b) Collective Action*

Plaintiff incorporates and re-alleges paragraphs 1 through 60 as though set forth herein.

61.     This Count arises from Defendants' violation of the FLSA for Defendants' failure to pay Plaintiff and other similarly situated laborers for all time worked which resulted in being paid less than the federally required minimum wage.

62.     Plaintiff were directed to work and, in fact,  did work but were  not compensated at least at the federal minimum wage rate for all time worked.

63.     Other similarly situated employees, likewise, were directed to work and, in fact, did work but were not compensated at least at the federal minimum wage rate for all time worked.

64.     Plaintiff and other similarly situated employees were entitled to be compensated at least at the federal minimum wage rate pursuant to the FLSA.

65.     Defendants violated the FLSA by failing to compensate Plaintiff and other similarly situated employees at least at the federal minimum wage rate for all time worked.

66.     Plaintiff and other similarly situated employees are entitled to recover unpaid wages for up to three (3) years prior to the filing of this suit because Defendants' failure to pay at least the federal minimum wage rate was a willful violation of the FLSA.

WHEREFORE, Plaintiff and the similarly situated employees he seeks to represent pray for a judgment against Defendants as follows:

A.     That the Court determines that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

B.     A judgment in the amount of the difference between the federally-mandated minimum wage rate and the hourly wage paid to Plaintiff and similarly situated employees of Defendants;

C.     Liquidated damages in the amount equal to the unpaid minimum wages;

14

D.     That the Court declare that Defendants violated the FLSA;

E.     That the Court enjoin Defendants from violating the FLSA;

F.     Reasonable attorneys' fees and costs of this action as provided by the FLSA; and

G.     Such other and further relief as this Court deems appropriate and just.

**COUNT II**
**Violation of the FLSA – Overtime Wages**
**Plaintiff on behalf of himself and similarly situated employees**
*Section 216(b) Collective Action*

Plaintiff incorporates and re-alleges paragraphs 1 through 66 as though set forth herein.

67.     This Count arises from Defendants' violation of the FLSA for Defendants' failure to pay Plaintiff and other similarly situated laborers one and a half times their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks.

68.     Defendants directed Plaintiff to work, and Plaintiff did work, in excess of forty (40) hours in individual work weeks in the three (3) years prior to Plaintiff filing this lawsuit.

69.     Plaintiff were not exempt from the overtime provisions of the FLSA.

70.     Plaintiff were entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

71.     Defendants did not pay Plaintiff overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

72.     Defendants likewise directed other similarly situated, non-exempt employees to work in excess of forty (40) hours in individual work weeks.

73.     Defendants' failure to pay Plaintiff, and other similarly situated employees, overtime wages for all time worked in excess of forty (40) hours worked in individual work weeks was a violation of the FLSA.

15

74.     Plaintiff and other similarly situated laborers are entitled to recover unpaid overtime wages for up to three (3) years prior to the filing of this lawsuit because Defendants' violation of the FLSA was willful.

WHEREFORE, Plaintiff and the similarly situated employees he seeks to represent pray for a judgment against Defendants as follows:

A.     That the Court determines that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

B.     A judgment in the amount of unpaid overtime wages for all time Plaintiff and similarly situated employees of Defendants worked in excess of forty (40) hours in individual work weeks;

C.     Liquidated damages in the amount equal to the unpaid wages;

D.     That the Court declare the Defendants violated the FLSA;

E.     That the Court enjoin Defendants from continuing to violate the FLSA;

F.     Reasonable attorneys' fees and costs of this action as provided by the FLSA; and

G.     Such other and further relief as this Court deems appropriate and just.

## COUNT III
### Violation of the IMWL – Minimum Wages
### Plaintiff on behalf of himself and similarly situated employees
### *Class Action*

Plaintiff incorporates and re-alleges paragraphs 1 through 74 as though set forth herein.

75.     This Count arises from Defendants' violation of the IMWL for Defendants' failure to pay Plaintiff and similarly situated laborers at least the Illinois-mandated minimum wages for all time worked in individual work weeks.

76.     Plaintiff were directed to work by Defendants and, in fact, did work but were not compensated at least at the Illinois minimum wage rate for all time worked.

77.     Other similarly situated laborers, likewise, were directed to work by Defendants and did work but were not compensated at least at the Illinois minimum wage rate for all time worked.

78.     Pursuant to 820 ILCS 105/4, Plaintiff and other similarly situated laborers were entitled to be compensated at least the then applicable Illinois-mandated minimum wage rate for all time worked.

79.     Defendants violated the IMWL by failing to compensate Plaintiff and other similarly situated employees at least the Illinois-mandated minimum wage rate for all time worked.

80.     The Class that Plaintiff seeks to represent in regard to the minimum wages claim arising under the IMWL is composed of and defined as all persons who have been employed by Defendant as janitorial employees since March 26, 2011 to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and the Class he seeks to represent pray for a judgment against Defendants as follows:

A.     That the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b);

B.     A judgment in the amount of all minimum wages due to Plaintiff and the Class as provided by the IMWL;

C.     Statutory damages for Plaintiff and the Class pursuant to the formula set forth in 820 ILCS 105/12(a);

D.     That the Court declare that Defendants have violated the IMWL;

E.     That the Court enjoin Defendants from violating the IMWL;

F.     Reasonable attorneys' fees and costs of this action as provided by the IMWL, 820 ILCS 105/1 et seq.;

G.     Such other and further relief as this Court deems appropriate and just.

**COUNT IV**
**Violation of the IMWL – Overtime Wages**
**Plaintiff on behalf of himself and similarly situated employees**
*Class Action*

Plaintiff incorporates and re-alleges paragraphs 1 through 80 as though set forth herein.

81.     This Count arises from Defendants' violation of the IMWL for Defendants' failure to pay Plaintiff and similarly situated employees the overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

82.     Defendants directed Plaintiff to work, and Plaintiff did work, in excess of forty (40) hours in individual work weeks in the three (3) years prior to Plaintiff filing this lawsuit.

83.     Plaintiff was not exempt from the overtime provisions of the IMWL.

84.     Plaintiff were entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

85.     Defendants did not pay Plaintiff and similarly situated employees overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

86.     Defendants' failure to pay Plaintiff and similarly situated employees for all time worked in excess of forty (40) hours worked in individual work weeks was a violation of the IMWL.

87.     Plaintiff and members of the class are entitled to recover unpaid wages for the duration of the IMWL Class Period, from three (3) years prior to the filing of the lawsuit up until the entry of judgment on this case.

88.     The Class that Plaintiff seeks to represent in regard to the overtime claim arising under the IMWL is composed of and defined as all persons who have been employed by Defendant as janitorial employees since March 26, 2011 to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and the Class he seeks to represent pray for a judgment against Defendants as follows:

A.  That the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b);

B.  A judgment in the amount of unpaid overtime wages for Plaintiff and the Class as provided by the IMWL;

C.  Statutory damages for Plaintiff and the Class pursuant to the formula set forth in 820 ILCS 105/12(a);

D.  That the Court declare the Defendants violated the IMWL;

E.  That the Court enjoin Defendants from violating the IMWL;

F.  Reasonable attorneys' fees and costs of this action as provided by the IMWL, 820 ILCS 105/1 *et seq*., and

G.  Such other and further relief as this Court deems appropriate and just.

## COUNT V
**(Violation of the Illinois Wage Payment and Collection Act – Unpaid Wages)**
**Plaintiff on behalf of himself and similarly situated employees**
*Class Action*

Plaintiff incorporates and realleges paragraphs 1 through 88 as though set forth herein.

89.  This Count arises from Defendants' violation of the IWPCA for its failure to pay Plaintiff and the Class he represents wages earned for all time worked at the rate agreed to by the parties.

90.  During the course of his employment with Defendants, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

91.  Other similarly situated laborers likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

92.  Defendants had a practice of not paying Plaintiff and other similarly situated laborers all compensation at the rate agreed to by the Parties. For example,

    a.   Defendants had a practice of not compensating Plaintiff and other similarly situated laborers for work completed if the customer did not pay Defendants;

    b.   Defendants had a practice of not providing Plaintiffs with a sufficient amount of work to reach the agreed upon amount of compensation each month.

93.    Plaintiffs and the Class they represent members were entitled to be paid for all time worked at the rate agreed to by the parties.

94.    Defendant staffing Network's failure to pay Plaintiffs and the Class they represent for all time worked at the rate agreed to by the parties violated the IWPCA.

95.    Plaintiffs and the Class are entitled to recover owed wages for a period extending back to April 29, 2003.

96.    The Class that Plaintiff seeks to represent in regard to the claim for unpaid wages pursuant to the IWPCA is composed of and defined as all persons employed by Defendants as janitorial employees since March 26, 2004 to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and the Class pray for a judgment against Defendants as follows:

A.    That the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b);

B.    A judgment in the amount of all back wages due Plaintiff and the Class as provided by the IWPCA;

C.    Statutory damages for Plaintiff and the Class as provided by the IWPCA;

D.    That the Court declare that the Defendants have violated the IWPCA;

E.    That the Court enjoin Defendants from violating the IWPCA;

F.    Reasonable attorneys' fees and costs of this action as provided by the IWPCA; and

G.    Such other and further relief as this Court deems appropriate and just.

**COUNT VI**
**Violation of the IWPCA – Unlawful Deductions**
**Plaintiff on behalf of himself and similarly situated employees**
*Class Action*

Plaintiff incorporates and realleges paragraphs 1 through 96 as though set forth herein.

97.     This Count arises from Defendants' practice of making unlawful deductions from Plaintiff's and other similarly situated employees' earned wages.

98.     Defendants had a practice of making unlawful deductions from Plaintiff's earned wages without authorization from Plaintiff in writing as required by the IWPCA. Such deductions: (a) were not required by law; (b) were not to Plaintiff' benefit; (c) were not in response to a valid wage assignment or wage deduction order; and (d) were not made with the express written consent of Plaintiff, given freely at the time the deductions were made.

99.     Defendants likewise had a practice of making unlawful deductions from other similarly situated laborers' wages without their authorization.

100.     Defendants' practice of making unlawful deductions from Plaintiff' and other similarly situated laborers' earned wages violated the IWPCA.

101.     Plaintiff and other similarly situated laborers are entitled to recover all the unlawful deductions made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit.

102.     The Class that Plaintiff seeks to represent in regard to the claim for unlawful deductions under the IWPCA is composed of and defined as all persons employed by Defendants as janitorial employees since March 26, 2004 to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and the Class pray for a judgment against Defendants as follows:

A.     That the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b);

21

B.      A judgment in the amount of all back wages due Plaintiff and the Class as provided by the IWPCA;

C.      Statutory damages for Plaintiff and the Class as provided by the IWPCA;

D.      That the Court declare that the Defendants have violated the IWPCA;

E.      That the Court enjoin Defendants from violating the IWPCA;

F.      Reasonable attorneys' fees and costs of this action as provided by the IWPCA; and

G.      Such other and further relief as this Court deems appropriate and just.

**COUNT VII**
**Fraud in the Inducement**
*Class Action*

Plaintiff realleges and incorporates paragraphs 1 through 102 as though set forth herein.

103.    This Count arises from Defendants' systemic misrepresentations to Plaintiff of, including, but not limited to, the amount of available cleaning contracts and of the guaranteed amount of monthly income,

104.    Prior to Plaintiff's signing the franchise agreement with Defendants, Defendants made a number of false statements of material fact, including, but not limited to, the amount of available cleaning contracts and the guaranteed amount of monthly income.

105.    At the time Defendants made these false statements of material fact, Defendants knew the statements were false.

106.    Defendants made these false statements of material fact with the intent of inducing Plaintiff to act, namely to sign the franchise agreement with Defendants.

107.    Plaintiff reasonably relied upon the truth of Defendants' statements.

108.    As a result of Defendants' false statements of material fact, Plaintiff suffered monetary damages, including, but not limited to, the price of their "franchise," hidden fees and costs, and lost wages and benefits provided by an employer to an employee.

109.    Defendants' false statements of material fact were a part of Defendants' scheme to defraud Plaintiff through a larger pattern of deceptions and through breaches of the franchise agreement that demonstrated Defendants' intent not to keep its promises to Plaintiff.

110.    Defendants likewise made a number of false statements of material fact to other similarly situated laborers.

111.    Plaintiff and other similarly situated laborers are entitled to receive the amount paid to Defendants for the purchase price of the "franchise," in order to be made whole.

112.    The Class that Plaintiff seeks to represent in regards to his claim for fraud in the inducement is composed of and defined as all persons who signed a franchise agreement with Defendants in the state of Illinois on or after March 26, 2009 to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and Class pray for a judgment against Defendants as follows:

A.      That this Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b);

B.      A judgment in the amount of the purchase price for the "franchise" paid by Plaintiff and the Class;

C.      Reasonable attorneys' fees and costs of this action; and

D.      Such other and further relief as this Court deems appropriate and just.

### COUNT VIII
### Violation of the Illinois Franchise Disclosure Act
### *Class Action*

Plaintiff realleges and incorporates paragraphs 1 through 112 as though set forth herein.

113.    This Count arises from Defendants' failure to comply with the requirements of the IFDA to the detriment of Plaintiff and other similarly situated franchisees.

114.    In Illinois, franchisors covered by the IFDA are required to file a "disclosure statement" with the Illinois Attorney General's office. 815 ILCS 705/10.

23

115.     A franchisor is obligated to give a copy of the disclosure statement not less than fourteen (14) days prior to the execution by the prospective franchisee of any binding franchise agreement, or at least fourteen (14) days prior to the receipt by the franchisor of any consideration, whichever occurs first.  815 ILCS 705/5(2).

116.     The disclosure statement Defendants were required to file with the Illinois Attorney General and to provide to prospective franchisees must: (a) be free from any false or misleading statement of a material fact; (b) not omit to state any material fact required to be stated or necessary to make the statements not misleading; and (c) be accurate and complete as of the effective date. 815 ILCS 705/16.

117.     During the relevant time period, Defendants were franchisors and were required to file a disclosure statement with the Illinois Attorney General's office.

118.     Defendants filed a disclosure statement with the Illinois Attorney General's office which contained material misrepresentations and omissions, including, but not limited to, the amount of available cleaning contracts and of the guaranteed amount of monthly income,

119.     During the relevant time period, Defendants were franchisors and were required to provide potential franchisees, including Plaintiff and other similarly situated franchisees, with a copy of the disclosure statement filed with the Illinois Attorney General's office not less than fourteen (14) days prior to the execution by the prospective franchisee of any binding franchise agreement, or at least fourteen (14) days prior to the receipt by the franchisor of any consideration, whichever occurs first.

120.     During the relevant time period, Defendants provided Plaintiff and other similarly situated franchisees with a disclosure statement which contained material misrepresentations and

omissions, including, but not limited to, the amount of available cleaning contracts and of the guaranteed amount of monthly income,

121.    During the relevant time period, Defendants failed to provide Plaintiff and other similarly situated franchisees with a disclosure statement not less than fourteen (14) days prior to the execution by the prospective franchisee of any binding franchise agreement, or at least fourteen (14) days prior to the receipt by the franchisor of any consideration, whichever occurs first.

122.    Defendants' failure to provide Plaintiff and other similarly situated franchisees with a disclosure statement denied Plaintiff and the Class with the information the Illinois legislature deemed necessary for a franchisee "to make an intelligent decision regarding franchises being offered for sale,

123.    Defendants' failure to comply with the requirements of the IFDA permit Plaintiff and the Class to invalidate the franchise agreement.

124.    Plaintiff and other similarly situated laborers are entitled to receive the amount paid to Defendants for the purchase price of the "franchise," in order to be made whole.

125.    The Class that Plaintiff seeks to represent in regards to his IFDA claim is composed of and defined as all persons who signed a franchise agreement with Defendants in the state of Illinois on or after March 26, 2009 up to the date a final judgment is entered in this matter.

WHEREFORE, Plaintiff and Class pray for a judgment against Defendants as follows:

A.    That this Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b);

B.    A judgment in the amount of the purchase price for the "franchise" paid by Plaintiff and the Class;

C.    Other damages caused by Defendants' violation of the IFDA;

D.    Reasonable attorneys' fees and costs of this action; and

E.    Such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

Dated: September 9, 2014

s/Christopher J. Williams
Christopher J. Williams (ARDC #6284262)
Alvar Ayala (ARDC #6295810)
Jenee Gaskin (ARDC #6312870)
Workers Law Office, P.C.
401 S. LaSalle, Suite 1400
Chicago, Il 60605
(312) 795-9121