# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE SANCHEZ, on behalf of himself and all other persons similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>CLEANNET USA, INC. and CLEANNET OF ILLINOIS, INC.,<br><br>  Defendants. | Case No. 14-cv-02143<br><br>Judge James B. Zagel |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CLEANNET USA, INC. AND CLEANNET OF ILLINOIS, INC.'S MOTION TO DISMISS OR STAY, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PENDING ALTERNATIVE DISPUTE RESOLUTION**

## I.   INTRODUCTION

Defendants CleanNet USA, Inc. ("CleanNet USA") and CleanNet of Illinois, Inc. ("CleanNet IL") (collectively, "Defendants"), who are alleged by Plaintiff Jose Sanchez ("Sanchez" or "Plaintiff") to comprise one entity, hereby move to dismiss Plaintiff's First Amended Complaint ("Amended Complaint") under Federal Rule of Civil Procedure 12(b)(1) or stay this lawsuit pursuant to Section 3 of the Federal Arbitration Act ("FAA"), on the grounds that Plaintiff's individual claims are subject to final and binding arbitration pursuant to the dispute resolution provisions in his franchise agreement with CleanNet IL, which contains a class action waiver. In the alternative, Defendants move to compel arbitration of Plaintiff's individual claims and stay this litigation pursuant to Section 4 of the FAA.[1]

---

[1] This is Defendants' second Motion to Dismiss or Stay, with the first having been filed on June

## II. FACTS ALLEGED IN THE AMENDED COMPLAINT

### A. Sanchez's Theory Of Liability.

Defendant CleanNet USA is the master franchisor in a nationwide network of commercial cleaning franchised businesses. The CleanNet-brand of commercial cleaning franchises is represented by area operators, such as CleanNet IL, which offer unit franchises to investors interested in owning and operating a commercial cleaning business. Sanchez claims that Defendants improperly classified him and other franchisees as independent contractors instead of employees, thereby depriving him and other franchisees of the benefits of an employment relationship under the federal Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA"). Sanchez further claims that Defendants engaged in fraud in the inducement to entice him to enter into the franchise agreement, and that Defendants violated the Illinois Franchise Disclosure Act ("IFDA") (See Am. Compl. ¶¶ 103-125).

### B. Sanchez Signed A Franchise Agreement Relevant To This Action.

On May 19, 2011, Sanchez entered into a franchise agreement with CleanNet IL (the "Franchise Agreement," or "Agreement" attached hereto as Exhibit 1).[2] In executing the Franchise Agreement, Sanchez acknowledged that he "has read this Agreement and Franchisor's

---

3, 2014. However, the Court granted Plaintiff leave to file an amended complaint on August 26, 2014, and this Motion addresses the allegations in the Amended Complaint.

[2] Sanchez did not attach a copy of the Franchise Agreement to his Amended Complaint; however, it is well established that in considering a Rule 12(b)(1) motion, the Court may consider the Franchise Agreement despite Sanchez's failure to attach it to the Amended Complaint. *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). As Sanchez makes repeated references to the Franchise Agreement in the Amended Complaint and bases Counts VII and VIII on that agreement, the same is true even under the more stringent standard of a Rule 12(b)(6) motion. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (*quoting Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)); *see also Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (same)

disclosure document, and that [he] has no knowledge of any representations . . . which are contrary to the statements in Franchisor's disclosure document or to the terms of this Agreement, and that [he] understands and accepts the terms, conditions and covenants contained in this Agreement . . . ;" (*Id.* at 1-2). Sanchez initialed every page of the Franchise Agreement next to the statement "I have read, understood, and agree with the statements on this page as written," and signed his name in full on the final page of the Agreement. (*See generally* Ex. 1).

    **C.    The Franchise Agreement Contains A Dispute Resolution Provision With A Class Action Waiver.**

The Franchise Agreement contains a dispute resolution provision that provides for mediation, and if the dispute remains unresolved, arbitration before the American Arbitration Association, "in accordance with the Federal Arbitration Act" and solely "on behalf of Franchisee" and <u>not</u> "as a representative of, or on behalf of any other person or entity":

> **A.  <u>Mediation</u>**.  Before, and as a necessary condition precedent to, filing a demand for arbitration in accordance with this Agreement, Franchisee and Franchisor shall attempt to settle the dispute through mediation administered by the American Arbitration Association ("AAA") at its office closest in proximity to Franchisor's office in accordance with the Commercial Mediation Rules of the AAA. . . .
>
> **B.  <u>Arbitration</u>**.  All disputes, controversies, and claims of any kind arising between the parties, including but not limited to claims arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating to the performance of either party that are unable to be settled through mediation shall be settled by arbitration administered by the AAA at its office closest in proximity to the Franchisor's office, <u>in accordance with the Federal Arbitration Act</u> and the Commercial Rules of the AAA, unless the parties otherwise agree in accordance with Section XXII.C of this Agreement. . . .
>
>     5.    No arbitration or action under this Agreement shall include, by consolidation, joinder, or any other manner, any claims by any person or entity in privity with or claiming through or on behalf of Franchisee. <u>Franchisee shall not seek to arbitrate or litigate as a representative of, or on behalf of, any other person or entity, any dispute, controversy, and claim of any kind arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the</u>

<blockquote>
franchise, or other claims or causes of action relating to the performance of either party to this Agreement.

6. To the fullest extent permitted by law, direct negotiations, followed by mediation and/or binding arbitration, shall be the exclusive means of resolving any and all claims relating to this Agreement, including, but not limited to, claims for breach of contract, breach of covenant of good faith and fair dealing, fraud, violation of any and all franchise registration, disclosure and/or franchise protection statutes, regulations, or ordinances, whether federal, state or local, or any other common law claims.
</blockquote>

(Ex. 1 at 37-38, § XXII(A)-(B)) (emphasis added).

### D. Sanchez Alleges That CleanNet USA And CleanNet IL Acted As His Joint Employers With Respect To All Conduct Alleged In The Amended Complaint.

The Franchise Agreement provides that Sanchez's relationship with CleanNet IL is that of an independent contractor. (Ex. 1 at 33, §XVIII(A)). However, throughout his Amended Complaint, Sanchez asserts that CleanNet USA and CleanNet IL jointly employed Sanchez and acted in concert against him in engaging in allegedly unlawful conduct. (*See generally* Am. Compl.) Indeed, Sanchez uses the term "CleanNet" throughout the Amended Complaint without any distinction between CleanNet USA and CleanNet IL, and asserts, generally, that "CleanNet":

- Created a business model to sell low wage jobs to unskilled workers through a "fictional 'franchise agreement'" (Am. Compl. ¶ 2);

- Through this franchise agreement, controlled almost all aspects of the franchised business (*id.* at ¶¶ 4, 19-21);

- Had its representatives knowingly and intentionally misrepresent terms of the relationship between CleanNet and its franchisees to induce Plaintiff and others to sign franchise agreements (*id.* at ¶ 31);

- Misclassified Plaintiff and other similarly situated laborers as independent contractors (*id.* at ¶ 49); and

- Because of this misclassification, deprived Sanchez and other similarly situated laborers of the benefits of an employment relationship under law (*id.* at ¶ 55).

Accordingly, there can be no dispute that (1) Sanchez claims that Defendants are acting in concert and (2) his claims arise out of and are related to the terms of the Franchise Agreement.

### E. Sanchez Failed To Follow The Dispute Resolution Procedures In The Franchise Agreement, And Instead Filed This Action.

Instead of seeking resolution of his disputes with Defendants through the dispute resolution process set forth in the Franchise Agreement, Sanchez filed this lawsuit. On March 26, 2014, CleanNet IL filed a submission for mediation with the American Arbitration Association ("AAA"), and on May 22, 2014, CleanNet USA filed a similar submission for mediation with AAA. By letter dated May 23, 2014, Defendants' counsel demanded compliance with the dispute resolution provision. (Declaration of Darren M. Mungerson, dated June 3, 2014 ("Mungerson Decl.") attached as Exhibit 2, ¶ 4, Ex. C). The cases have been assigned AAA Case numbers 51-20-1400-0355 and 01-14-0000-4940. On May 30, 2014, Sanchez's counsel responded to the letter but did not address Defendants' demand for mediation. *Id.*, ¶5, Ex. D.

## III. LEGAL ARGUMENT

### A. Sanchez must be compelled to arbitrate his claims against CleanNet IL and CleanNet USA.

#### 1. The Legal Standard.

The dispute resolution provision in Plaintiff's Franchise Agreement specifies that if a dispute relating to the Franchise Agreement is not resolved through mediation, it must be arbitrated before the AAA pursuant to the FAA. (Ex. 1, at 37-38, ¶XXII(A)-(B)). Under Section 2 of the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA promotes "a liberal federal policy favoring arbitration agreements … [and]

any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Not only does the Agreement specify that the FAA shall apply, but doubtlessly it falls within the FAA's scope. Congress enacted the FAA pursuant to its broad power under the Commerce Clause. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 271 (1995); *see New York v. U.S.*, 505 U.S. 144, 158 (1992) ("As interstate commerce has become ubiquitous, activities once considered purely local have come to have effects on the national economy, and have accordingly come within the scope of Congress' commerce power"). In *Allied Bruce*, the Court explained that the FAA's phrase "involving commerce" is the functional equivalent to the phrase "affecting commerce," which "signals an intent to exercise Congress' power to the full." *Id.* at 273-75; 277. Accordingly, the U.S. Supreme Court explained that the FAA is applicable not only to "persons or activities within the flow of interstate commerce," but also to transactions that merely "affect" commerce. *Id.* at 273-74.

Thus, in *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003), the Court held that "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce.'" It explained that application of the FAA is not "defeated because the individual [transactions], taken alone, did not have a 'substantial effect on interstate commerce.'" Rather, Congress' Commerce Clause power is appropriately exercised "'in individual cases <u>without</u> showing <u>any</u> specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' *Id.* (emphasis added.) The Court held that it is "[o]nly that general practice [that] need bear on interstate commerce in a substantial way." Id.

Defendants' alleged activities and the Franchise Agreement fall within the broad reach of

the Commerce Clause. Plaintiff concedes as much in his Amended Complaint, alleging that he "has handled goods that moved in interstate commerce," and that CleanNet USA and CleanNet IL have "had two or more employees that have handled goods that have moved in interstate commerce." (Am. Compl. ¶¶ 14-15). Thus, the terms of the Agreement, the pleadings and incontestable facts demonstrate that the FAA applies.

The FAA requires district courts to either stay or dismiss the underlying lawsuit and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3; *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012). "If the Court is satisfied that the parties agreed to arbitrate, it must promptly compel arbitration." *Cramer v. Bank of Am., N.A.*, Case No. 12 C 8681, 2013 U.S. Dist. LEXIS 75592, at *6 (*citing* 9 U.S.C. § 4). "A court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (*quoting Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032-33 (7th Cir. 2012)).

"It is well settled in this Circuit that in order to compel arbitration, the court must find (1) that a written arbitration agreement exists between the parties; (2) that there is a dispute among the parties within the scope of the arbitration agreement; and (3) that one of the parties is refusing to comply with the arbitration agreement by declining to participate in arbitration." *Johnson v. Orkin*, LLC, 928 F. Supp. 2d 989, 1002-03 (N.D. Ill. 2013) (internal citations omitted). As all of these requirements are met, this Court should compel Sanchez to participate in the dispute resolution procedures set forth in the Franchise Agreement or dismiss Plaintiff's Amended Complaint under F.R.C.P. 12(b)(1), which challenges a court's subject matter jurisdiction. The Court analyzes a motion to dismiss under Rule 12(b)(1) as any other motion to

dismiss: assuming for purposes of the motion that all of the well-pleaded allegations in the complaint are true and drawing all reasonable inferences in favor of the nonmoving party. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Here, the evidence demonstrates that Sanchez entered into a valid dispute resolution agreement requiring mediation, then arbitration, and the Court should compel Sanchez to submit to the contractually-agreed upon procedures.

### 2. Sanchez entered into a binding agreement to mediate and then arbitrate his disputes with Defendants.

Under the FAA, courts look to the state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 367-8 (7th Cir. 1999) (*citing Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1130 (7th Cir. 1997)). To determine whether there is a valid and enforceable agreement to arbitrate, Illinois courts look for the "basic ingredients" of "an offer, an acceptance, and consideration." *See Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 857 N.E.2d 99 (Ill. 2006).

Here, a valid and enforceable agreement exists requiring Sanchez to arbitrate his claims. First, a valid offer and acceptance occurred when Sanchez both signed the Franchise Agreement and initialed each page, including the pages specifically pertaining to dispute resolution. (Ex. 1, at 37-40, § XXII); *see Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) (reversing denial of motion to compel arbitration where "Janiga's signature . . . objectively demonstrated his assent to the contract."). Indeed, Illinois courts and courts in the Seventh Circuit have found an agreement to arbitrate even where one party did not physically sign any agreement. *See Melena,* 219 Ill.2d at 152 (all elements of contract existed where employees were mailed materials relating to the arbitration program, which constituted an offer, and plaintiff's

continuation of her employment after receiving notice of the program provided both her acceptance and the necessary consideration); *Collier v. Real Time Staffing Services, Inc.*, No. 11 C 6209, 2012 U.S. Dist. LEXIS 50548 (N.D. Ill. Apr. 11, 2012) (motion to compel arbitration when agreement to arbitrate was part of on-line application); *Shimkus v. O'Charley's, Inc.*, No. 11 C 122, 2011 U.S. Dist. LEXIS 91529 (N.D. Ind. Aug. 16, 2011) (motion to compel arbitration granted where plaintiff, as part of an electronic document, "was prompted and required to click 'I Agree'" to the arbitration agreement).

The terms of the dispute resolution provisions and Sanchez's agreement to arbitrate all disputes are not ambiguous. Both Sanchez and CleanNet IL agreed that "[a]ll disputes, controversies, and claims of any kind arising between the parties," are subject to the dispute resolution provisions. (Ex. 1 at 37-40, § XXII).

When, as here, both parties agree to arbitrate, there is adequate consideration for an arbitration agreement. *Matterhorn, Inc. v. NCR Corp.*, 763 F.3d 866, 869 (7th Cir. 1975) ("If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate."). Even beyond the mutual agreement to engage in the dispute resolution measures, there was additional consideration for the entire Franchise Agreement, including the dispute resolution provisions. CleanNet IL offered Sanchez the opportunity to own a CleanNet franchise for his promises in the Agreement. To the extent that Sanchez now claims he was actually employed by both Defendants and not an independent business owner, courts applying Illinois law have consistently held that employment is sufficient consideration to create a contract. *See Johnson v. Travelers Prop. Casualty*, 56 F. Supp. 2d 1025, 1026-27 (N.D. Ill. 1999) (holding arbitration policy enacted as condition of continued employment created a

binding contract); *Koveleskie*, 167 F.3d at 368 (7th Cir. 1999) (holding that an arbitration agreement signed as a condition of employment was supported by adequate consideration because the plaintiff promised to arbitrate future disputes in exchange for continued employment and both parties were bound by the terms of the agreement).

All three elements of contract formation – offer, acceptance, and consideration – are present here, and the dispute resolution provisions are therefore valid and binding on Sanchez.

### 3. Sanchez's claims are within the broad scope of the Franchise Agreement's arbitration clause.

As the Seventh Circuit has noted, whether a claim is within the scope of an arbitration agreement is a matter of federal, not state, law. *Gore v. Alltel Communs., LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Under the FAA: (1) there is a presumption to arbitrate when contracts contain arbitration provisions; (2) any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, and (3) unless the court has a positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, arbitration is appropriate. *Id.* (*citing Kiefer Speciality Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). "Arbitration clauses containing language such as 'arising out of' are 'extremely broad' and 'necessarily create a presumption of arbitrability.'" *Kiefer Speciality Flooring,* 174 F.3d at 909-10; *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (finding that both contract rescission and tort claims were subject to arbitration under franchise agreement).

Sanchez's claims fall within the broad scope of the dispute resolution provisions in the Franchise Agreement. The Agreement uses broad language requiring that all disputes "arising out of or relating to" the parties' relationship and the Franchise Agreement be mediated and then arbitrated. Sanchez's allegations concern contentions that Defendants improperly utilized the

Agreement's terms to control Sanchez and others as employees rather than independent contractors, and fraudulently induced Sanchez to enter into the Agreement. That Sanchez is essentially seeking the Court to undo the Agreement and rewrite the history of his relationship with Defendants is of no moment, as his claims still "arise out of," and are inextricably intertwined with, the Franchise Agreement. In *Kairy v. Supershuttle Int'l*, 2012 U.S. Dist. LEXIS 134945, at *16-19 (N.D. Cal. Sept. 20, 2012), for instance, the Court readily concluded that franchisees' claims that they were misclassified as independent contractors rather than employees arose out of their franchise agreements and therefore were subject to the agreements' arbitration provisions. The court noted the broad presumption in favor of arbitration, and held that because the franchise agreements covered all aspects of the franchisees' relationships with the franchisor, claims that the franchise agreement improperly classified the franchisees as independent contractors necessarily arose out of the agreements. *Id.* In doing so, the Court noted that it was acting consistently with other courts who had reached the same conclusion. *Id.* That Sanchez's wage-related claims arise out of the Franchise Agreement is buttressed by the fact that the relationship being challenged – Plaintiff's status as an independent contractor – arises directly out of provisions in the Agreement identifying Plaintiff as an independent contractor (Ex. 1 at 33 § XVIII).

Plaintiff's amendment to include claims under the IFDA does not change this determination. In *Jensen v. Quik Int'l*, 213 Ill. 2d 119, 126-127 (2004), the Illinois Supreme Court held that allegations of violations of the IFDA did not make the arbitration agreement invalid or unforceable. Further, the Supreme Court held that the plaintiff's actions to rescind the franchise agreement at issue (the same relief sought by Sanchez here) were arbitrable pursuant to the arbitration clause in the franchise agreement. *Id.* at 129.

### 4. CleanNet USA May Enforce the Dispute Resolution Provisions.

Although Sanchez's claims against CleanNet IL are arbitrable as both are signatories to the Franchise Agreement, Sanchez must also be compelled to arbitrate his claims against CleanNet USA, a non-signatory to the Agreement. Courts regularly allow non-signatory entities to enforce an arbitration agreement against a signatory on the basis of equitable estoppel. *See Leff v. Deutsche Bank A.G.*, No. 08-CV-733, 2009 U.S. Dist. LEXIS 41713, at *13-21 (N.D. Ill. May 14, 2009) (non-signatory could compel arbitration where Plaintiffs alleged that non-signatory engaged in conspiracy with signatories); *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981)) (non-signatory can compel arbitration, when a signatory's claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration); *Levin v. NC12, Inc.*, No. 10 C 01606, 2011 U.S. Dist. LEXIS 70039 (N.D. Ill. June 29, 2011). On this theory, where the signatory either: (1) brings claims that either arise out of or are inextricably intertwined with the Agreement he signed against non-signatories or (2) brings claims that treat both non-signatories and signatories as a joint entity with congruent interests, he is estopped from asserting that he need not arbitrate against the non-signatories. *See* "Application of Equitable Estoppel by Nonsignatory to Compel Arbitration -- Federal Cases," Michael A. Rosenhouse, J.D., 39 A.L.R. Fed. 2d 17 (2014) ("it is generally accepted that signatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.")[3]

---

[3] The cases applying these theories are legion. *See, e.g. CD Partners, LLC v. Grizzle,* 424 F.3d 795, 799 (8th Cir. 2005) (The courts clearly recognize a nonsignatory's ability to force a signatory into arbitration under the "alternative" estoppel theory when the relationship of the persons, wrongs and issues involved is a close one); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-321 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court

Here, the estoppel theory prohibits Sanchez from evading his Agreement to arbitrate his claims simply because he has added CleanNet USA, a non-signatory, as a party to his Amended Complaint. Sanchez treats both Defendants as a single concerted entity and his claims against them are inextricably intertwined, as the claims all arise out of the same operative Franchise Agreement he signed.

B.   **The Case Should Be Dismissed Or, In The Alternative, Stayed.**

1.   **The Court Should Dismiss Or Stay The Amended Complaint Pending Arbitration Of Plaintiff's Individual Claims.**

Defendants respectfully request the Court to dismiss the Amended Complaint, so that the parties may pursue alternative dispute resolution. When a court determines that all of a Plaintiff's claims are subject to arbitration, the complaint should be dismissed. *See Dalope v. United Health Care of Ill.*, No. 03 C 8918, 2004 U.S. Dist. LEXIS 20831, at *7 (N.D. Ill. Oct. 7, 2004); *see also Chambers v. Aviva Life & Annuity Co.*, No. 12 C 9589, 2013 U.S. Dist. LEXIS 47246, at *15 (N.D. Ill. Mar. 26, 2013) (dismissing action, compelling arbitration, and holding, "this Court finds that the case should be dismissed and not stayed because all of the claims are arbitrable."); *Johnson v. Orkin, LLC*, 928 F.Supp.2d 989, 1008-1009 (N.D. Ill. 2013) (dismissing entire action when arbitration agreements were broad and "retaining jurisdiction and staying this action would only serve to waste judicial resources").

However, should the Court find dismissal is not warranted, Defendants request that the Court stay this action pending arbitration of Plaintiff's individual claims, pursuant to Section 3 of the FAA. Plaintiff's individual claims are referable to arbitration under the dispute resolution provisions, and the Court should issue a stay, pending alternative dispute resolution of Plaintiff's individual claims "in accordance with the terms of the agreement" (9 U.S.C. §3), which includes

---

may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement").

a class action waiver.

### 2. In The Alternative, The Court Should Compel Arbitration If Mediation Does Not Resolve The Dispute Within 30 Days.

In the alternative, the Court should issue an order compelling arbitration of Plaintiff's individual claims unless the matter is resolved by mediation with the AAA within 30 days of the issuance of the Court's order, pursuant to Section 4 of the FAA.

The Court may compel arbitration of only Plaintiff's individual claims for two reasons. First, Plaintiff is the sole named plaintiff in this matter. Before a class is certified in federal court, the named plaintiff is the only party to the action and thus the only one who can be compelled to arbitration. *E.g. Torres v. Simpatico, Inc.*, 2014 U.S. Dist. LEXIS 12857, at \*\*20-22 (E.D. Mo. Feb. 3, 2014) (in class action, compelling named plaintiff's individual claims to arbitration and dismissing action); *Kairy v. Supershuttle Int'l*, 2012 U.S. Dist. LEXIS 134945, at \*\*27-28 (N.D. Cal. Sept. 20, 2012) (in class action, compelling named plaintiffs who signed arbitration agreements to individual arbitrations and staying action as to other plaintiffs who had not signed arbitration agreements).

Second, under Section 4 of the FAA, arbitration may only be compelled "in the manner provided for in such agreement." Here, the Franchise Agreement contains a valid class action waiver, and so Plaintiff may only be compelled to arbitrate his individual claims. Courts in this district have found that class action waivers are enforceable. *Montgomery v. Corinthian Colleges, Inc.*, No. 11 C 365, 2011 U.S. Dist. LEXIS 31651 (N.D. Ill. March 25, 2011) (finding waiver of class claims in arbitration enforceable); *O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010 U.S. Dist. LEXIS 125879 (N.D. Ill. Nov. 29, 2010) (same). Accordingly, if the Court elects to compel arbitration, it may only do so with respect to Plaintiff's individual claims.

**IV.     CONCLUSION**

For all of these reasons, the Court should dismiss the Amended Complaint or stay this action pending mediation followed by arbitration of Plaintiff's individual claims.  In the alternative, the Court should compel arbitration of Plaintiff's individual claims if mediation does not resolve the dispute within 30 days of the issuance of the Court's Order.


Dated: September 16, 2014                                         Respectfully submitted,


*/s/ Darren M. Mungerson*
Darren M. Mungerson (IL #6256434)
**LITTLER MENDELSON, P.C.**
321 N. Clark St., Suite 1000
Chicago, IL  60654
Phone:  (312) 795-3297
Email:  dmungerson@littler.com

Francis P. Tighe, III
Attorney at Law
161 N. Clark St., Suite 2070
Chicago, IL  60601
Phone:  (312-664-5015
Email:  tighelaw@gmail.com

Attorneys for Defendants
CLEANNET USA, INC. and CLEANNET OF ILLINOIS, INC.

# CERTIFICATE OF SERVICE

I, Darren M. Mungerson, hereby certify that I caused the foregoing Memorandum of Law to be filed with the Court via the Court's CM/ECF system and served via the same method upon the following:

Attorneys for Plaintiff:

| | |
|---|---|
| Christopher J. Williams | Yolando Carrillo |
| Alvar Ayala | Lydia Colunga-Merchant |
| Jenee Gaskin | Working Hands Legal Clinic |
| Workers' Law Office, P.C. | 401 S. LaSalle St |
| 401 S. LaSalle St. | Suite 1400 |
| Suite 1400 | Chicago, IL 60605 |
| Chicago, IL 60605 | (312) 795-9115 |
| (312) 795-9121 | ycarrillo@workers-law.org |
| cwilliams@wagetheftlaw.com | lcolungamerchant@workinghandslegalclinic.org |
| aayala@wagetheftlaw.com | |
| jgasking@wagetheflaw.com | |

Dated: September 16, 2014       /s/ Darren M. Mungerson
                                Darren M. Mungerson

Firmwide:128995809.1 620000.1142