UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE SANCHEZ, on behalf of himself and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLEANNET USA, INC. and CLEANNET OF ILLINOIS, INC.,<br><br>Defendants. | No. 14 C 2143<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This putative class action arises out of Plaintiff Jose Sanchez's participation as a franchisee in a nationwide network of commercial cleaning franchised businesses. On March 26, 2014, Plaintiff filed an 8-count complaint alleging that franchisor Defendants CleanNet U.S.A., Inc. ("CleanNet USA") and CleanNet of Illinois, Inc. ("CleanNet IL," and collectively, "Defendants") improperly classified him and other franchisees as independent contractors instead of employees, thereby depriving them of the benefits of an employment relationship under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. Plaintiff also alleges that Defendants engaged in fraud in the inducement to entice him to enter into the franchise agreement, and that Defendants violated the Illinois Franchise Disclosure Act, 815 ILCS 705/1 *et seq*.

This matter is presently before the court on Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, stay Sanchez's complaint pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), on the ground that his

1

individual claims are subject to final and binding arbitration pursuant to the dispute resolution provisions in his franchise agreement.

**FACTS**

CleanNet USA is a master franchisor whose brand of commercial cleaning franchises is represented by area operators, such as CleanNet IL, that offer unit franchises to investors interested in owning and operating a commercial cleaning business. Jose Sanchez is a Spanish speaker with a limited education who, along with his brother-in-law, purchased a "package" of $2,500 in monthly billing for a franchise price of $11,800. They paid $6,000 in money they borrowed for the franchise and CleanNet IL financed the remaining $5,800 at 9%.

As a part of this purchase, Sanchez entered into a 41-page franchise agreement with CleanNet IL on May 19, 2011 (the "Franchise Agreement"). Yvette Lopez appeared at the meeting on behalf of CleanNet and discussed the Franchise Agreement with Sanchez in Spanish. Sanchez alleges that CleanNet provided him with the Franchise Agreement in English on a take it-or-leave-it basis and failed to inform him that the Franchise Agreement contained a dispute resolution provision or limited his remedies while leaving Defendants' available remedies completely intact. In addition to signing his name in full on the final page, Sanchez initialed every page of the Franchise Agreement next to the statement "I have read, understood, and agree with the statements on this page as written."

The Franchise Agreement contains a dispute resolution provision that provides for mediation and, if the dispute remains unresolved, arbitration before the American Arbitration Association:

> **A. Mediation**. Before, and as a necessary condition precedent to, filing a demand for arbitration in accordance with this Agreement, Franchisee and Franchisor shall attempt to settle the dispute through mediation administered by the American Arbitration

> Association ("AAA") at its office closest in proximity to Franchisor's office in accordance with the Commercial Mediation Rules of the AAA. . . .
>
> **B. Arbitration**. All disputes, controversies, and claims of any kind arising between the parties, including but not limited to claims arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating to the performance of either party that are unable to be settled through mediation shall be settled by arbitration administered by the AAA at its office closest in proximity to the Franchisor's office, in accordance with the Federal Arbitration Act and the Commercial Rules of the AAA, unless the parties otherwise agree in accordance with Section XXII.C of this Agreement. . . .
>
> 5. No arbitration or action under this Agreement shall include, by consolidation, joinder, or any other manner, any claims by any person or entity in privity with or claiming through or on behalf of Franchisee. <u>Franchisee shall not seek to arbitrate or litigate as a representative of, or on behalf of, any other person or entity, any dispute, controversy, and claim of any kind arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating to the performance of either party to this Agreement</u>.
>
> 6. To the fullest extent permitted by law, direct negotiations, followed by mediation and/or <u>binding arbitration, shall be the exclusive means of resolving any and all claims relating to this Agreement</u>, including, but not limited to, claims for breach of contract, breach of covenant of good faith and fair dealing, fraud, violation of any and all franchise registration, disclosure and/or franchise protection statutes, regulations, or ordinances, whether federal, state or local, or any other common law claims.

The Franchise Agreement also allocates mediation and arbitration costs. The initiating party pays the filing fee for the mediation while both parties share the mediator's compensation and administrative expenses. If the matter is not resolved through mediation, then that same initiating party must pay the arbitration filing fee while both parties share the costs of the arbitrator and administrative expenses.

Under the Franchise Agreement, the franchisee waives its right to collect punitive

damages, consequential damages, loss of profits, and attorneys' fees and costs. Instead, the franchisor is only liable for "the percentage of total account lacking, multiplied by the initial franchise fee multiplied by 80%" in the event that CleanNet provided at least one customer, but failed to meet its guaranteed monthly billing quota. If CleanNet issues a refund, the amount refunded is reduced by any amounts financed, including unpaid interest and "[CleanNet's] obligation to provide additional initial accounts shall be considered fulfilled, and any further obligation in this regard shall be extinguished."

On the same day that Sanchez filed this lawsuit, March 26, 2014, CleanNet IL filed a submission for mediation with the American Arbitration Association ("AAA"). On May 22, 2014, CleanNet USA filed a similar submission for mediation with AAA. Both cases have been assigned AAA case numbers. By letter dated May 23, 2014, Defendants' counsel demanded compliance with the dispute resolution provision. On May 30, 2014, Sanchez's counsel responded to the letter but did not address Defendants' demand for mediation.

## DISCUSSION

### I. Sanchez's Claims Against CleanNet IL

Defendants' motion to dismiss is brought pursuant to Rule 12(b)(1) because it contends that the court lacks subject-matter jurisdiction due to the parties' arbitration agreement. *See Montgomery v. Corinthian Colleges, Inc.*, No. 11 C 365, 2011 WL 1118942, at *2 (N.D. Ill. Mar. 25, 2011) (citing *Lamb v. Gen. Elec. Consumer & Indus.*, 6 CV 216, 2006 WL 2228962, at *1 (N.D. Ind. Aug. 3, 2006)). On a Rule 12(b)(1) motion, the court may consider matters beyond the allegations in the complaint. *Id.* (citing *Falbe v. Dell, Inc.*, 4 C 1425, 2004 WL 1588243, at *1 n.1 (N.D. Ill. July 14, 2004)). The court analyzes a motion to dismiss under Rule 12(b)(1) as any other motion to dismiss: assuming for purposes of the motion that all of the well-pleaded

4

allegations in the complaint are true and drawing all reasonable inferences in favor of the nonmoving party. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

The FAA governs questions of arbitrability in both state and federal courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir.1995). "The central purpose of the FAA is to 'ensure that private agreements to arbitrate are enforced according to their terms.'" *O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010 WL 4932665, at *2 (N.D. Ill. Nov. 29, 2010) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 53–54 (1995)). For claims covered by a written and enforceable arbitration agreement, the FAA requires district courts to either stay or dismiss the underlying lawsuit and compel arbitration. 9 U.S.C. § 3; *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012). As the Seventh Circuit has noted, whether a claim is within the scope of an arbitration agreement is a matter of federal, not state, law. *Gore v. Alltel Communs., LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

Under the FAA: (1) there is a presumption to arbitrate when contracts contain arbitration provisions, (2) any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, and (3) unless the court has a positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, arbitration is appropriate. *Id.* (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). Arbitration clauses containing the phrase "arising out of," such as this one, are extremely broad and "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring*, 174 F.3d at 909–10; *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (finding that both contract rescission and tort claims were subject to arbitration under a franchise agreement).

If there are equitable or legal grounds for the revocation of the contractual arbitration

5

agreement, however, the FAA establishes that the arbitration agreement does not need to be enforced. 9 U.S.C. § 2. Although federal law governs whether a claim is within the scope of an arbitration agreement, courts look to the state law of contracts to determine whether the parties entered into a valid and enforceable agreement to arbitrate. *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367–68 (7th Cir. 1999) (citing *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)).

Sanchez argues that the Franchise Agreement's arbitration provisions are unenforceable because they are unconscionable. Under Illinois law, which both sides agree applies here, "a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 21, 857 N.E.2d 250, 263 (2006) (citing *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 99 (2006)).

A.  **Procedural Unconscionability**

Procedural unconscionability refers to a contract "where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Williams v. TCF Nat. Bank*, No. 12 C 05115, 2013 WL 708123, at *6 (N.D. Ill. Feb. 26, 2013) (citing *Kinkel*, 223 Ill. at 22). Procedural unconscionability analysis takes into account the disparity in bargaining power between the parties. *Id.* According to the Illinois Supreme Court, procedural unconscionability boils down to "impropriety during the process of forming the contract depriving a party of a meaningful choice." *Id.* (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill.App.3d 980, 989 (1980)). To determine whether a meaningful choice existed, Illinois courts consider (1) the manner in which the contract was formed, (2) whether each party had a reasonable chance to understand the contract, and (3) whether key terms were "hidden in a maze of fine print." *Id.*

Here, Sanchez argues that the Defendants' take-it-or-leave-it negotiation approach, Defendants' failure to explain every term in Spanish, and the length and presentation of the arbitration provisions within the Franchise Agreement are grounds for procedural unconscionability.

The Franchise Agreement is a contract of adhesion, which means that the terms are "nonnegotiable and presented in fine print in language that the average consumer might not fully understand." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 26 (2006). Contracts of adhesion, however, have long been recognized by Illinois courts as "a fact of modern life." *See Williams*, 2013 WL 708123, at *9; *Kinkel*, 223 Ill. at 26. "Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called 'take-it-or-leave-it" deal." *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) (*citing Kewanee Prod.Credit Ass'n v. G. Larson & Sons Farms*, 146 Ill.App.3d 301, 305 (1986)). In *Koveleskie*, the plaintiff argued that she was forced to execute a mandatory arbitration agreement as a condition of employment and that she had no bargaining power because she was an individual employee rather than a business entity. *Koveleskie*, 167 F.3d at 367. Rejecting this argument, the Seventh Circuit held that the agreement did not create an unconscionable contract of adhesion because "driving a hard bargain is not a wrongful act" and the "disparity in size of the parties entering into an agreement . . . without the wrongful use of that power" is insufficient to render the arbitration agreement unenforceable." *Id*.

Similarly, Defendants' failure to translate the entire Franchise Agreement into Spanish or explain every provision of the Franchise Agreement in Spanish does not render the agreement unenforceable. *See Arellano v. Household Fin. Corp. III*, No. 01 C 2433, 2002 WL 221604, at *4 (N.D. Ill. Feb. 13, 2002) (court compelled arbitration although the negotiations leading up to the

7

agreement were conducted in Spanish but the documents were drafted in English, the court rejected the plaintiff's allegations of fraud and unconscionability and compelled arbitration. *Id.*

Although the Franchise Agreement was not written in Sanchez's native tongue, Defendants had no obligation to explain every single term in Spanish. *See Montgomery v. Corinthian Colleges, Inc.*, No. 11 C 365, 2011 WL 1118942, at \*\*3–4 (N.D. Ill. Mar. 25, 2011). Sanchez argues that *Cisneros v. Am. Gen. Fin. Servs.*, 2012 WL 3025913 (N.D. Cal. 2012) supports his position that the Franchise Agreement was procedurally unconscionable, but the facts of *Cisneros* are noticeably different from the case presented here. In *Cisneros*, the court held that the terms of an agreement were procedurally unconscionable after finding that (1) the plaintiff could not write, read, or speak English at the time of the transaction, (2) no one was available to translate the documents, and (3) signing the documents was the only way the plaintiff knew to make the sales representative leave her home. *Cisneros*, 2012 WL 3025913, \*5.

Sanchez's last argument for procedural unconscionability—that the dispute resolution provisions are unconscionable on the basis that they were not prominently displayed in the Franchise Agreement—is both factually and legally meritless. In *Brown v. Luxottica Retail N. Am. Inc.*, No. 09 C 7816, 2010 WL 3893820, at \*3 (N.D. Ill. Sept. 29, 2010), the plaintiffs contended that an arbitration agreement was unconscionable because it was "buried" in a 51-page document and was "lengthy, single-spaced, confusing, and written in a technical style that a reasonable worker could not understand." The court rejected the plaintiffs' arguments, elaborating that the dispute resolution agreement, while in the middle of a handbook, was in regular font, single-spaced, and easily readable and that "in the absence of fraud, the law does not protect persons who choose not to read documents given to them." *Id.*; *Valentine v. Wideopen West Finance, LLC*, 2012 WL 1021809, \*3 (N.D. Ill. 2012) (finding that arbitration

provision on page 26 of a 30-page document was not procedurally unconscionable because it was no more buried than any other provision in the agreement). Here, as in *Brown*, the arbitration provision is no more "buried" than any other provision in the Franchise Agreement, as the font size and theme remain the same throughout the 41-page document.

Although the language barrier presented in this case combined with the length and complexity of the Franchise Agreement creates a degree of procedural unconscionability, this is not enough on its own to render the arbitration provision unenforceable.

**B.      Substantive Unconscionability**

Sanchez also argues that the arbitration agreement within the Franchise Agreement is substantively unconscionable. "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *O'Quinn*, 2010 WL 4932665, at *5 (quoting *Kinkel,* 306 Ill.Dec. 157, 857 N.E.2d at 267).

Specifically, Sanchez argues that the Franchise Agreement's dispute resolution provision contains four substantively unconscionable terms: (1) requiring mediation first, with the filing party paying the filing fee and the remainder costs being borne by the parties equally; (2) requiring arbitration if mediation is not successful with the filing party paying the filing fee and the remainder costs being borne by the parties equally; (3) waiving of punitive damages; and (4) limiting remedies to the actual damages sustained except as otherwise provided in the Franchise Agreement and barring recovery of attorneys' fees.

Neither of the first two allegedly unconscionable terms -- which allocate costs for the

9

mediation and arbitration process -- is unconscionable. When determining whether a provision that forces plaintiffs to equally share the costs of arbitration is commercially reasonable, courts ask whether the named plaintiffs can afford arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum."); *see also Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003)**;** *see also Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 635 (7th Cir. 2011). The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs. *See Green Tree Fin. Corp.-Alabama,* 531 U.S. at 92. There is no bright line for determining when the costs associated with arbitration will be prohibitive, but the Seventh Circuit has outlined two pertinent questions: (1) how the party's financial situation will be factored into an assessment of the arbitration costs under this hardship provision, and (2) how the costs will compare between litigating in the courts versus proceeding in arbitration. *Baumann*, 421 F. App'x at 635 (citing *James v. McDonald Corp.*, 417 F. 3d 672, 678-80 (7th Cir. 2005)).

Here, arbitration costs are not prohibitively high because the Franchise Agreement specifically provides that any mediation or arbitration would be administered in accordance with the Commercial Mediation and Arbitration Rules of the American Arbitration Association ("AAA Rules"). These AAA Rules allow for filing and administrative fees to be reduced in cases of hardship and allowed an arbitrator to assess the arbitrator's fees and expenses against any specified party.[1] Similarly, the AAA charges no administrative fees for mediation and the parties

---

[1] *See, e.g.*, AAA Rule 53 ("The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees"); AAA Rule 54 ("In addition to a final award . . . the arbitrator may assess and apportion, the fees, expenses, and compensation related to such award as the arbitrator deems appropriate.").

10

can select a lower cost mediator.

Whether the final two allegedly unconscionable terms—which provide remedial limitations for franchisees—are substantively unconscionable is a much closer question. Damage limitations are not *per se* unconscionable. *O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010 WL 4932665, at *7 (N.D. Ill. Nov. 29, 2010). Further, mutuality of obligations in an arbitration agreement is not essential under Illinois law as long as there is valid consideration. *Williams*, 2013 WL 708123, at *11. Attempts to categorically exclude statutorily granted and statutorily unwaivable forms of relief, however, are void and unenforceable. *See O'Quinn*, 2010 WL 4932665, at *7; *see also Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 238, 882 N.E.2d 157, 179 (2008).

In *O'Quinn*, an arbitration provision that prohibited punitive damages "unless the statute under which [the parties] are suing provides otherwise" was deemed unenforceable because the plaintiff brought claims under the Consumer Fraud Act, which authorizes punitive damages. 2010 WL 4932665, at *7. In another Consumer Fraud Act case, *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, a similar prohibition on punitive damages was deemed unenforceable even though the arbitration agreement did not provide the exception to its limitation on punitive damages limitation that was present in *O'Quinn*. 379 Ill. App. 3d at 238.

Similar to the Consumer Fraud Act analyzed in *O'Quinn* and *Tortoriello*, the Illinois Franchise Disclosure Act provides that "Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act or any other law of this State is void." 815 ILCS 705/41. Because the Illinois Franchise Disclosure Act, 815 ILCS 705/22, makes franchisors liable to franchisees for damages and attorneys' fees, the remedial limitations in the Franchise Agreement—which includes Sanchez's waiver of

punitive damages and recovery of attorneys' fees and costs—are unenforceable.

The next issue to consider is whether these unenforceable remedial limitations are severable. "In determining whether it is appropriate to sever an unconscionable provision from an agreement and enforce the remainder of the agreement, Illinois courts are to consider whether the provisions operate independently of each other or whether the valid provisions are 'so closely connected with unenforceable provisions that to do so would be tantamount to rewriting the Agreement.'" *Tortoriello*, 379 Ill. App. at 238 (quoting *Abbott–Interfast Corp. v. Harkabus*, 250 Ill.App.3d 13, 21 (1993)). Just as they were in *O'Quinn* and *Tortoriello*, the remedial limitation provisions in this case are severable because (1) the unconscionable terms do not affect the intent of the Franchise Agreement's arbitration provision overall, (2) the parties included a severability clause in the Franchise Agreement, and (3) the "strong policy in favor of enforcing arbitration agreements [is] best served by allowing the valid portions of the arbitration agreement to remain in force while severing the unconscionable provision." *Tortoriello*, 379 Ill. App. 3d at 238. Because they can be severed, these remedial limitations do not make the entire arbitration provision within the Franchise Agreement unconscionable. *See Tortoriello*, 379 Ill. App. 3d at 238–39; *see also O'Quinn*, 2010 WL 4932665, at *7.

Although the remedial limitation provisions discussed above are unenforceable and must be severed because they attempt to restrict Sanchez's unwaivable rights under the Illinois Franchise Disclosure Act, it should be noted that the arbitrator is capable of handling these types of decisions should any others arise during arbitration. *See PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 406 (2003). Defendants argue that the Supreme Court in *PacifiCare* held that the question of damages is exclusively reserved for the arbitrator. This contention misses the point. *PacifiCare* stands for the proposition that when an arbitration clause is ambiguous as to

whether statutory remedies are available, courts should not presume the arbitrator will err in law. *Id.* at 407.

Accordingly, the totality of circumstances does not warrant a finding of either procedural unconscionability or substantive unconscionability after the Franchise Agreement's remedial limitations are severed. Because what is left of the Franchise Agreement is therefore valid and enforceable, I order Sanchez to arbitrate his claims against CleanNet IL on an individual basis.

**II.     Sanchez's Claims Against CleanNet USA**

Sanchez argues that his claims against CleanNet USA are not arbitrable because CleanNet USA is a non-signatory to the Franchise Agreement. However, courts regularly allow non-signatory entities to enforce an arbitration agreement against a signatory on the basis of equitable estoppel. *See Leff v. Deutsche Bank AG*, No. 08-CV-733, 2009 WL 1380819, at *7 (N.D. Ill. May 14, 2009) (non-signatory could compel arbitration where Plaintiffs alleged that non-signatory engaged in "interdependent and concerted misconduct" with signatories); *see also Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981) (non-signatory can compel arbitration when a signatory's claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration).

Here, equitable estoppel prohibits Sanchez from avoiding arbitration on his claims against CleanNet USA because his claims treat CleanNet IL and CleanNet USA as a single concerted entity and are inextricably intertwined. Because all of Sanchez's claims against CleanNet USA arise out of the same operative Franchise Agreement, I also order Sanchez to arbitrate his claims against CleanNet USA on an individual basis.

**III.     Dismissal of the Case**

Although the FAA generally requires a federal district court to stay an action pending an arbitration, the complaint should be dismissed where a court determines that all of a plaintiff's claims are subject to arbitration. *Chambers v. Aviva Life & Annuity Co.*, No. 12 C 9589, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013); *Johnson v. Orkin, LLC*, No. 12 C 141, 2013 WL 828506, at *15 (N.D. Ill. Mar. 6, 2013); *Denari v. Rist*, No. 10 C 2704, 2011 WL 332543, at *11 (N.D. Ill. Mar. 24, 2011); *Reineke v. Circuit City Stores, Inc.,* No. 03 C 3146, 2004 WL 442639, at *5 (N.D.Ill. Mar.9, 2004). Because I have not certified a class, I am only compelling arbitration of Sanchez's individual claims.

## CONCLUSION

For the aforementioned reasons, Defendants' motion to compel arbitration is granted and this case is dismissed.

ENTER:

James B. Zagel
United States District Judge

DATE: January 15, 2015